# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

| | |
|---|---|
| JULIE M. JOYNER, | ) |
| Plaintiff, | ) |
| v. | ) Civil Action No. 1:13-cv-067-CG-N |
| TOWN OF ELBERTA, | ) |
| Defendant. | ) |

## ORDER

This is an Equal Pay Act[1] ("EPA") lawsuit brought by the former interim police chief of the Town of Elberta, Alabama, against the town. Now before the court are the defendant Town of Elberta's motion for summary judgment (Doc. 36), the plaintiff Julie M. Joyner's ("Joyner") response (Doc. 40) and the Town of Elberta's reply (Doc. 42). For the reasons stated below, the Town's motion for summary judgment due to be granted.

## BACKGROUND

On March 7, 2011, Joyner was appointed Interim Police Chief for the Town of Elberta, Alabama. (Doc. 37-1 at 15-16; Doc. 37-2 at 64-65). At the time she had 15 years law enforcement experience.

Joyner graduated from Fairhope High School in 1990. (Doc. 37-2 at 3). She obtained an associate degree in Criminal Justice from Faulkner State Community College. (Doc. 37-2 at 4). Joyner completed her minimum standards training at the

---

[1] 29 U.S.C. § 206(d).

Southwest Alabama Police Academy in 1993 (Doc. 37-2 at 5) and became employed as a patrol officer with the City of Foley Police Department in April 1994. (Doc. 37-2 at 6 - 7). In 1999, Plaintiff resigned her position with the City of Foley and became employed as a D.A.R.E. (Drug Abuse Resistance Education) Officer with the Town of Elberta. (Doc. 37-2 at 8). Plaintiff served as a Patrol Officer with the D.A.R.E. program for five (5) or six (6) years. (Doc. 37-2 at 9). In 2004, Joyner was promoted to the rank of Sergeant. (Doc. 37-2 at 11). As a Sergeant, the Plaintiff supervised three (3) to five (5) officers. (Doc. 37-2 at 12).

While Plaintiff was employed as a Sergeant in the Police Department, Mickey Pledger was selected to serve as Police Chief for the Town of Elberta. (Doc. 37-2 at 25-26). There was no set salary for the position of Police Chief. (Doc. 37-1 at 14). While serving as Chief, Pledger was paid approximately $42,000 per year. (Doc. 37-1 at 15). On March 4, 2011, Pledger was arrested for discharging a firearm into the building housing the police department. (Doc. 37-2 at 26-27; Doc. 37-1 at 6). On March 7, 2011, the Mayor appointed Joyner to the position of Interim Police Chief. (Doc. 37-2 at 27-28; Doc. 37-1 at 7-8). At that time, Joyner was the most senior person in the department. (Doc. 37-1 at 8).

When she was appointed to serve as Interim Chief, Joyner's wages would remain as they were prior to the appointment. (Doc. 37-2 at 28-29). At that time, the Plaintiff was making close to $20.00 an hour. (Doc. 37-2, at 29).

On August 15, 2011, Plaintiff sent a letter to the Mayor and council members offering to become the permanent Police Chief. (Doc. 37-2 at 30-31). In the letter,

Joyner stated that she would like a contract in writing stating that if the current mayor and council were not re-elected the next year and a new council and mayor came into office, she would retain her previous position and salary within the department. (Doc. 37-2 at 31). The Plaintiff requested a salary of $53,000, stating that it was $1,000 more per month than her current salary. (Doc. 37-2 at 31). The Town responded, stating that those funds were not available at that time. (Doc. 37-2, at 33). The Mayor also testified that the Town could not agree to a contract guaranteeing that Joyner could return to her former position. (Doc. 37-1 at 10, 18-19).

On October 20, 2011, Plaintiff sent a second letter to the Town, increasing her salary demand to $56,000. (Doc. 37-2 at 34). On October 24, 2011, Joyner submitted a letter to the council stating that she was willing to wait and let them re-evaluate the economic situation of the Town the next year. (Doc. 37-2 at 36-38). Additionally, Joyner stated that she was willing to wait for the council to decide whether or not they wanted to appoint Joyner to a permanent position or wanted to bring in other applicants and appoint someone else as Police Chief. (Doc. 37-2 at 38).

At the October 24, 2011 council meeting, Joyner was given a two-dollar ($2.00) per-hour raise, increasing her pay to $21.65 per hour. (Doc. 37-2, pp. 39-41). She was also given a de facto one-dollar-per-hour raise in that she would be allowed take-home use of her Town-owned vehicle. (Doc. 37-2 at 41). The Plaintiff accepted the $2.00-per-hour raise as well as the benefit of being able to take her city

vehicle home. (Doc. 37-2 at 42-43). After the two-dollar ($2.00) raise, Joyner was making approximately forty-five thousand dollars ($45,000.00) per year. (Doc. 37-2 at 53). This was three thousand dollars ($3,000.00) more per year than the salary paid to former Chief Mickey Pledger. (Doc. 37-1 at 15; Doc. 37-2 at 54). This was also more than was paid to Joe Brown, who served as Acting Chief for a brief period of time before Mickey Pledger was selected as Police Chief. (Doc. 37-1 at 8-9; Doc 37-10). Joyner's tax records reflect that she was paid approximately $42,863 by the Town in 2011. (Doc. 37-11, Joyner 2011 tax records).

Joyner testified that after she was given this raise, Mayor Williams offered her the position of permanent Police Chief at her current pay rate of approximately $45,000 per year. (Doc. 40-2 at 9-11). Although Joyner had previously asked for the job at a salary of $53,000, Mayor Williams explained that due to the decline in the economy, the Town did not have the funds to pay her the salary she requested. Id. Joyner rejected the Mayor's offer because the Town could not guarantee her re-appointment as Police Chief or reinstatement as Sergeant after a new council was elected the following year. (Doc. 40-1 at ¶¶ 11-15; Doc. 40-3 at 7).

The mayor of the City of Summerdale called Mayor Williams and told him that he knew of an individual, Stanley DeVane, who would be a good candidate for the position of Police Chief. (Doc. 37-1 at 11). DeVane worked for the Pardon and Parole Board for the state of Alabama and was a 25-year veteran of the Dothan Police Department where he served as a squad commander for nine years. (Doc. 37-12; Doc. 37-1 at 12). As a squad commander, DeVane supervised a twenty

4

(20) officer patrol squad. (Doc. 37-12). DeVane holds a Bachelor's of Science Degree in Criminal Justice. He is also a graduate of the FBI National Academy. DeVane had completed more than 1,700 hours in law enforcement training. At the time he was hired by Elberta to be its Police Chief, DeVane had a total of thirty-four (34) years in law enforcement. (Doc. 37-12).

Williams made arrangements for DeVane to visit with him and three other council members. (Doc. 37-1 at 12). DeVane presented Williams with a salary request. (Doc. 37-1 at 13). Williams stated that they could not afford to hire DeVane at his requested salary level but would love to have him. (Doc. 37-1 at 13). DeVane was making more at the Pardon and Parole Board than the Town was offering. (Doc. 37-1 at 13).

At the end of 2011, it was discovered that the Town had a 26.79% increase in revenue over the previous year. (Doc. 27-9). As a result of increased sales tax revenue, ad valorem taxes and franchise fees, the Town was able to increase their salary offer to Stanley DeVane. (Doc. 37-1 at 23-24, Doc. 37-13 at 4). At the January 17, 2012, council meeting, the Town Council voted to appoint DeVane as Police Chief of the Town of Elberta. (Doc. 37-13 at 4). He was hired at a salary of $54,000. (Doc. 37-1 at 16-17, 20, Doc. 37-13 at 4).

## SUMMARY JUDGMENT STANDARD

Federal Rule of Civil Procedure 56(a) provides that summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material

5

fact and that the movant is entitled to judgment as a matter of law." The trial court's function is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986). "The mere existence of some evidence to support the non-moving party is not sufficient for denial of summary judgment; there must be 'sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party.'" Bailey v. Allgas, Inc., 284 F.3d 1237, 1243 (11th Cir. 2002) (quoting Anderson, 477 U.S. at 249). "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." Anderson, 477 U.S. at 249-250. (internal citations omitted).

The basic issue before the court on a motion for summary judgment is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." See Anderson, 477 U.S. at 251-252. The moving party bears the burden of proving that no genuine issue of material fact exists. O'Ferrell v. United States, 253 F.3d 1257, 1265 (11th Cir. 2001). In evaluating the argument of the moving party, the court must view all evidence in the light most favorable to the non-moving party, and resolve all reasonable doubts about the facts in its favor. Burton v. City of Belle Glade, 178 F.3d 1175, 1187 (11th Cir. 1999). "If reasonable minds might differ on the inferences arising from undisputed facts, then a court should deny summary judgment." Hinesville Bank v. Pony Exp. Courier Corp., 868 F.2d 1532, 1535 (11th Cir. 1989) (citing Mercantile Bank & Trust v. Fidelity & Deposit Co., 750 F.2d 838,

6

841 (11th Cir. 1985)).

Once the movant satisfies his initial burden under Rule 56(a), the non-moving party "must make a sufficient showing to establish the existence of each essential element to that party's case, and on which that party will bear the burden of proof at trial." Howard v. BP Oil Co., 32 F.3d 520, 524 (11th Cir. 1994) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986)). Otherwise stated, the non-movant must "demonstrate that there is indeed a material issue of fact that precludes summary judgment." Clark v. Coats & Clark, Inc., 929 F.2d 604, 608 (11th Cir. 1991). The non-moving party "may not rely merely on allegations or denials in its own pleading; rather, its response . . . must be by affidavits or as otherwise provided in this rule be set out specific facts showing a genuine issue for trial." Vega v. Invsco Group, Ltd., 2011 WL 2533755, *2 (11th Cir. 2011). "A mere 'scintilla' of evidence supporting the [non-moving] party's position will not suffice; there must be enough of a showing that the jury could reasonably find for that party." Walker v. Darby, 911 F.2d 1573, 1577 (11th Cir. 1990) (citation omitted). "[T]he nonmoving party may avail itself of all facts and justifiable inferences in the record taken as a whole." Tipton v. Bergrohr GMBH-Siegen, 965 F.2d 994, 998 (11th Cir. 1992). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (internal quotation and citation omitted).

**ANALYSIS**

**A. Prima Facie Case**

"To establish a prima facie case under the EPA, the plaintiff must show that an employer pays different wages to employees of opposite sexes for equal work on jobs the performance of which requires equal skill, effort, and responsibility, and which are performed under similar working conditions." Butler v. Albany Intern., 273 F. Supp. 2d 1278, 1288 (M.D. Ala. 2003) (quoting Miranda v. B & B Cash Grocery Store, Inc., 975 F.2d 1518, 1532 (11th Cir. 1992) (internal quotations omitted)). "A court's resolution of a plaintiff's claim that the work she performed is 'equal' to that of the comparator does not depend simply on a comparison of job titles or classifications, but on a comparative analysis of actual job requirements and performance." Id. (citing 29 C.F.R. § 1620.13(e); Pearce v. Wichita County, City of Wichita Falls, Tex., Hosp. Bd., 590 F.2d 128, 133 (5th Cir. 1979)). "The standard for determining whether jobs are equal in terms of skill, effort, and responsibility is high." Id. at 1289 (citing Waters v. Turner, Wood, & Smith Ins. Agency, Inc., 874 F.2d 797, 799 (11th Cir. 1989)).

> "Effort" as that term is used in connection with a prima facie case under the EPA "is concerned with the measurement of the physical or mental exertion needed for the performance of a job." Pearce, 590 F.2d at 133 (quoting 29 C.F.R. § 800.127 (1977)). On the other hand, "skill" is used to refer to factors such as "experience, training, education, and ability." Id. (quoting 29 C.F.R. § 800.125 (1977)). Finally, "responsibility" is used to refer to the "degree of accountability required in the performance of the job, with emphasis on the importance of the job obligation." Id. (quoting 29 C.F.R. § 800.130 (1977)).

Nixon v. Autauga County Bd. of Educ., 273 F. Supp. 2d 1292, 1298 (M.D. Ala. 2003). "Thus, although employees do not have to prove jobs are identical, they have the heavy burden of proving 'substantial identity of job functions.'" Butler, 273 F. Supp. 2d at 1289 (citations omitted).

The Town of Elberta argues that Joyner cannot establish a prima facie case under the EPA because Joyner's position as Interim Chief is not sufficiently comparable to the position of permanent Police Chief. The court disagrees. As Interim Chief for eleven months, Joyner handled disciplinary issues, computer system security, background checks, NCIC, dispatch, budgets, and jail contracts in addition to her duties as sergeant. (Doc. 40-2 at 69-70). The responsibilities assumed by Joyner were the same duties the permanent Police Chief performs. (Doc. 40-3 at 46). Moreover, Mayor Williams testified that Joyner was qualified for the position of permanent Police Chief and that she performed her duties well. Id. The fact that Joyner remained an hourly employee who was eligible for overtime while the permanent Police Chief is a salaried position is irrelevant to the comparative analysis of actual job requirements and performance. The evidence demonstrates that the position of Interim Police Chief and permanent Police Chief are substantially equal in terms of skill, effort and responsibility

It is undisputed that Joyner made approximately $45,000 per year as Interim Chief and DeVane was hired as permanent Police Chief at a salary of $54,000. The record also reflects that the job functions of Interim Chief and permanent Police Chief are substantially the same. Thus, the court finds that Joyner has established

9

a prima facie case under the EPA.

**B. Justification for Differential pay**

Where a plaintiff makes a prima facie showing under the EPA, the defendant "may avoid liability by proving by a preponderance of the evidence that the pay differences are based on . . . any other factor other than sex." Steger v. General Elec. Co., 318 F.3d 1066, 1077–78 (11th Cir. 2003). This is an affirmative defense, and the defendant's burden of proof is "heavy," in the sense that the employer "must demonstrate that the factor of sex provided *no basis* for the wage differential." Id. (citations and internal quotation marks omitted). The Eleventh Circuit has found factors other than sex to "include 'unique characteristics of the same job; . . . an individual's experience, training or ability; or . . . special exigent circumstances connected with the business." Irby v. Bittick, 44 F.3d 949, 955 (11th Cir. 1995). "[S]o long as subjective business justifications . . . are not overly subjective so as to render them incapable of being rebutted, they are legitimate factors to be considered." Schwartz v. Florida Bd. of Regents, 954 F.2d 620, 623 (11th Cir. 1991).

If the defendant meets that burden, the plaintiff must rebut the explanation by showing that the stated reason for a differential in pay is pretextual or offered as a post-event justification for a gender-based differential. Id. (citation omitted). The plaintiff is not required to prove discriminatory intent on the part of the defendant. Id. (citation omitted). "If the plaintiff is able to create the inference of pretext, there is an issue which should be reserved for trial." Id. (citation omitted).

The Town of Elberta argues that DeVane's prior pay and experience, the

10

temporary nature of Joyner's position as Interim Police Chief, and a change in the Town's revenue are factors other than sex that account for the difference in pay. "[P]rior pay plus experience establishes an affirmative defense under the EPA." White v. ThyssenKrupp Steel USA, LLC, 743 F. Supp. 2d 1340, 1354 (S.D. Ala. 2010); Irby, 44 F.3d at 955 ("While an employer may not overcome the burden of proof on the affirmative defense of relying on 'any other factor other than sex' by resting on prior pay alone, as the district court correctly found, there is no prohibition on utilizing prior pay as part of a mixed-motive, such as prior pay *and* more experience.").

When he was considered as a candidate for the position, DeVane had a total of 34 years experience in law enforcement. Joyner had a total of 18 years law enforcement experience. DeVane was a twenty-five year veteran of the Dothan Police Department where he served as squad commander for nine years. As squad commander, DeVane supervised a twenty-officer patrol squad. Joyner had eight years experience as a sergeant, supervising three to five officers. DeVane held a bachelor's degree in criminal justice, was graduate of the FBI National Academy, and had over 17,000 hours of law enforcement training. Joyner was a thirteen-year veteran of the Elberta Police Department. After Joyner was promoted to the rank of Sergeant, she spent eight years supervising three to five officers and served as Interim Police Chief March 2011 to February 2012. Joyner had an associate's degree in criminal justice, and beyond her graduation from the police academy, the record shows no additional training.

11

Mayor Williams and two former council members testified that they considered DeVane's prior pay with the Pardon and Parole Board and experience when making the decision to appoint him as Police Chief and pay him a greater salary than the compensation provided to Joyner. (Doc. 37-1 at 58-59; Doc. 37-19, 37-20).

The court finds that this evidence clearly supports, by more than a preponderance, that the pay differential between Joyner and DeVane was justified by the prior pay and superior experience of DeVane. This is "factor other than sex." Steger v. General Elec. Co., 318 F.3d 1066, 1077–78 (11th Cir. 2003).

Joyner contends that the Town of Elberta's proffer of prior pay and experience is pretextual because Joyner had more relevant experience working for the Elberta Police Department, including eleven months as Interim Chief, while DeVane had no experience working with the Elberta Police Department or as a Police Chief.  The court finds that it would be unreasonable to find the Town's reliance on DeVane's superior education and work experience in the relevant field of law enforcement to be pretextual simply because Joyner had acted as interim Chief for 9 months on a police force with fewer than 10 officers.  There is no evidence that Elberta's police department is unique in any way that would make Joyner's short service as interim Chief weigh more heavily in terms of qualification than DeVane's prior service and education.  Thus the court finds that plaintiff has not created an inference of pretext or post-event justification in regard to this factor and that summary judgment is due to be granted for the defendant.

Even though summary judgment is due to be granted on this factor alone, because additional factors "other than sex" are proffered by the defendant, the court will address those as well.

The temporary nature of a position is another "factor 'other than sex' to justify an otherwise illegal pay disparity, provided that the position was temporary in fact and that the employee in that position knew it was temporary." Nelson v. Chattahoochee Valley Hosp. Soc., 731 F. Supp. 2d 1217, 1236 (M.D. Ala. 2010 ) In this case, the defendant herself acknowledged that she knew the position was temporary. In her deposition she explained why she wrote the August 15, 2011, letter to the town council and mayor in which she gave conditions to her accepting the permanent position: a salary of $53,000 a year and a contract guaranteeing she could regain her former job as sergeant if the council newly-elected in the future did not retain her as chief. She testified: "I felt like that the period of interim, that I was not being paid any more money was -- It was time to move forward. Either with them sending applications or doing something to make it permanent." (Doc. 37-2 at 30). The evidence clearly supports the finding that the Interim Chief position was temporary, and that Plaintiff was aware that it was temporary.

A decline in revenue is also a sufficient affirmative defense under the EPA. Brokaw v. Weiser Sec., 780 F. Supp. 2d 1233, 1233 (S.D. Ala. 2011) (holding that a "$4,000 difference in pay between male branch manager with contract security services company and the female manager hired to replace him after he resigned

13

was based on a factor 'other than sex,' and thus female's lesser salary did not violate the Equal Pay Act, where male manager had been paid a salary of $44,000 per year and company hired female replacement at salary of $40,000, but the salary for the position had been reduced due to annual revenue losses at branch of $1,069,727 during male manager's employment period"). It is undisputed that the Town of Elberta paid $9,000 more per year to DeVane to be the permanent Police Chief than it paid Joyner when she served as Interim Chief. The Town of Elberta explains that this pay difference resulted from the decline in revenue during Joyner's employment. The Town's evidence shows that revenue declined 8.67% between 2009 and 2011 at which time Joyner served as Interim Police Chief. (Doc. 37-9). At the end of 2011, it was discovered that the Town's revenue increased 26.79% over the previous year. Id. The Town of Elberta asserts that as a result of increased sales tax revenue, ad valorem taxes and franchise fees, the Town could afford to hire DeVane at a salary of $54,000. (Doc. 37-1 at 23-24); see Id. ("It cannot be gainsaid that an employer may lawfully pay a new manager less money when the branch's revenues are far lower than they were when the old manager's pay was set.").

To show pretext, Joyner argues that despite the decline in revenue, the Town had enough money to pay her a salary of $53,000 during her service as Interim Chief. To support her argument, Joyner points to the testimony of Steve Kirkpatrick, a member of the Town Counsel at the time, that when Joyner was offered the job of permanent Police Chief the Town of Elberta was financially able to pay her a salary of $53,000. See Doc. 40-4. When viewing the facts in the light most

favorable to Joyner, the court finds that this is sufficient evidence to rebut the Town's affirmative defense of the decline in revenue as pretextual or a post-event justification for a gender-based differential.

Although the court has found that there is a genuine issue of fact as to the third factor raised by the Town of Elberta, the first two factors are each independent "factors other than sex." Thus, the court concludes that the Town of Elberta's motion for summary judgment is due to be granted.

## CONCLUSION

The Town of Elberta's motion for summary judgment (Doc. 36) is **GRANTED.**

**DONE** and **ORDERED** this 16th day of May, 2014.

/s/ Callie V. S. Granade
UNITED STATES DISTRICT JUDGE